Martin, J.
delivered the opinion of the court. The plaintiffs in this case claim the defendant, a negro man, as their slave. It therefore behooves them to show slavery in him and property in them.*
The evidence adduced for this purpose is: 1, a bill of sale by which the defendant was sold to them “to have and to hold the said negro man, and to dispose of him, as they shall think proper.” This instrument, bearing date the 5th of September, 1803, was executed at Detroit, in the territory of Michigan, was there recorded, and is duly authenticated.
2. The deposition of David Delaunay, who swears he knows a Mr. Forsyth, at St. Louis, whose christian name he is ignorant of, but knows not the other plaintiff; that there was at Detroit, a mercantile house, under the firm of Kinsey & Forsyth, but he is ignorant whether Mr. Forsyth of St. Louis be one of that house; that he saw the defendant at Mr. Forsyth’s in *386 St. Louis, but does not know to whom he belonged.
3. The deposition of Nicholas Girod, who swears that, while he was mayor of New-Orleans, the defendant was brought before him, and confessed he was a runaway and belonged to some person, the name of whom the witness does not recollect, who had promised him his freedom.
4. The deposition of A. B. Duchouquet, of St. Louis, who swore he never saw the defendant in the possession of the plaintiffs, because the plaintiffs lived at Peoria, in the Illinois territory; that the plaintiff, Forsyth, employed him in 1813, to stop the defendant; that he took him up in New-Orleans and brought him before the mayor, where he confessed he had ranaway from the plaintiffs, and did not like to return to them on account of a wife and children he had in New-Orleans.
5. The deposition of Pierre Le Vasseur, who knew the defendant in Peoria, in the Illinois territory, about ten years ago. He was known and reputed to be a slave; the witness knew him in the possession of Forsyth for four years. He ranaway from Peoria, about six years ago : the witness some time after met him at Maupertuis, in the Illinois territory, and the defendant *387 said he was ranaway from his master and was going to St. Louis.
On these facts the counsel contends that slavery of the defendant and the property of the plaintiffs are fully proven.
I. The evidence of slavery resulting from the color of the defendant, Adelle vs. Beauregard, 1 Martin 183, from his declarations that he had a master, that he belonged to a man who had promised him his freedom, from his attempt to justify his unwillingness to return, by the circumstance of his having a wife and children in New-Orleans, thereby tacitly admitting the obligation he was under of returning to the plaintiffs.
II. The property of the plaintiffs is said to be proven by the bill of sale.
The defendant’s counsel shews that in the territories of Michigan and the Illinois, the only places, except New-Orleans and St. Louis, which the defendant appears to have inhabited, slavery does not exist ; that it is forbidden by law. The ordinance of congress of the year 1797, providing that “there shall be neither slavery nor involuntary servitude, in the said territory, otherwise than for the punishment of crimes, whereof the party shall have been convicted. Provided *388 that any person escaping into the same, from whom labor or service is lawfully claimed in any one of the original states, such fugitive may be lawfully reclaimed, and conveyed to the person claiming his or her services as aforesaid."—Hence in the opinion of the counsel, a presumption arises that the defendant is free, which overweighs the contrary presumption which arises from the color.
It is further contended that as the bill of sale could convey no title, unless the defendant had been duly convicted of a crime, or in case he owed services in one of the original states, and had escaped into the Michigan territory, the plaintiffs are bound to bring the defendant within one of these two cases ; that if the defendant was convicted of a crime, by which he became bound to involuntary services, the record of this conviction ought to be produced; so ought, in the other case, evidence of the duty of involuntary service, in one of the original states and of escape into the territory; that the apparent unlawfulness of the authority, exercised by the plaintiffs over the defendant, to which he may have submitted from his ignorance of his right or of the means of asserting it, is not repelled by his admission that he had a master, that he belonged to a person who had promised him his freedom. *389 For while it appears that the plaintiffs de facto, though not de jure, kept the defendant for a number of years in servitude, it cannot seem extra-ordinary that he should refer to them by the appellation of his masters, and the alleged promise of freedom may well be presumed to have been made to allure the defendant into submission. Neither is it said, can the admission of the defendant, that he ranaway be received as conclusive evidence of a legal obligation to stay : flight from unlawful servitude being more generally resorted to, than the bold assertion of freedom. Kept for a number of years, perhaps from his birth, in bondage, the spirit of the injured negro is said to have been borne down, by the influence which long exerted mastery creates.
We are of opinion, that as the case affords no evidence of any residence of the defendant, in any country in which slavery is lawful, this case must he determined by the laws of the country in which the defendant dwelt when he came to the hands of the plaintiffs—that the ordinance of 1787, having proclaimed that slavery should not exist there, unless under two exceptions; the plaintiff must bring the defendant under either of them, and having failed to do so, must have their claim rejected.
Whenever a plaintiff demands by suit, that a *390 person whom he brings into court as a defendant, and thereby admits to be in possession of his freedom, should be declared to be his slave, he must strictly make out his case. In this, if in any, actore non probante absolvitur reus.
Here the plaintiffs have failed in a very essential point, proof of the alleged slavery of the defendant.
Their title can only have been lawful, at the time the bill of sale produced was made, on two grounds : the right of the vendor, or the liability of the object of the sale, must have been absolute or qualified. Absolute, viz. complete ownership and slavery, in the sole case of conviction of a crime by which freedom was forfeited. Qualified, viz. the right of reclaiming and conveying the defendant out of the territory into one of the original states, in which he owed involuntary servitude or labour. This qualified right could only exist in the case of the defendant’s escape.
Now, it cannot be contended that this qualified right only was disposed of: that, which is the evident object of the sale, is the absolute right to have and to hold during the natural life and to dispose as they please. The conduct of the plaintiffs, towards the defendant, shews that it was this absolute right which they considered themselves as the purchasers of. This they un *391 lawfully attempted to, and did successfully for a number of years, exercise, till the defendant sought his safety in flight. Their title to him, it exists, must be grounded on his conviction of a crime. Now the evidence of this, is a matter of record : the paper must be produced or accounted for.
Morse for the plaintiff; Moreau for the defendant.
The parish court erred in sustaining the plaintiff’s claim. Its judgment is therefore annulled, avoided and reversed, and this court doth order, adjudge and decree, that there be judgment for the defendant with costs.

 But see Trudeau’s ex’s vs. Robinette, January term 1817.